LEWIS vs. GUNN.

[WARNER, Chief Justice, being engaged in presiding over the senate organized as a court of impeachment, did not sit in this case.]

Where the property of a married woman is levied upon by her husband's creditor as his property, and she interposes a claim, she is bound just as any other suitor would be by the judgment in the claim case. If, without fraud on the part of the creditor or his attorney, the property is found subject, it matters not whether she or her counsel assented to the finding or not. A judgment which would be conclusive upon her if rendered contrary to her wishes, is not the less so because rendered with her consent and as part of a compromise arrangement to end litigation, and settle disputed rights.

Injunction. Husband and wife. Judgment. Married women. Before Judge HOOD. Randolph County. At Chambers. April 12, 1879.

Mrs. Lewis filed her bill against Gunn, alleging, in brief, as follows : She is the widow of John B. Lewis, who died in 1877. In 1872 she became possessed, by inheritance from her father, of 62 acres of land, being part of lots 146 and 147, in Randolph county ; and under the will of a deceased uncle, she received lot No. 241, in Early county. All of this was her own separate estate, and her husband had no interest whatever in it ; he always recognized it as hers, and she was in actual possession. Her husband owed Gunn a large debt. He informed her that he desired to secure this by a conveyance of *his* property, (not of hers), but that her written consent would be necessary to do so. Under his representations she signed a general consent to the conveyance made by him, in these terms: "My husband, J. B. Lewis, had my consent to make the conveyance of property he did to John McK. Gunn, of Cuthbert, Ga., on the 17th day of January, 1874." Dated February —, 1874. In fact, however, he conveyed her said property to secure his debt, taking a bond from Gunn to reconvey on payment of the debt. Failing to pay, Gunn sued, obtained judgment,

made a deed and levied on the land under Code, §1970. Complainant claimed. Her husband informed her that he could settle his debt on a satisfactory basis, and asked her to authorize an attorney to act for her; she declined; he assured her that her title should not, and could not, be molested, but simply that it would allow him to settle, and by using entreaties and finally threats of desertion, she was induced to sign a letter to her attorney authorizing a settletlement. The settlement actually made was to allow the lands to be found subject, and sold to Gunn, that complainant should rent from him, and have until January 1st, 1879, to repay the purchase money; on failure to do so, she should be considered a tenant holding over. Of all this she knew nothing until her lands were advertised, and even then only knew of the advertisement, and she was induced to be quiet by the assurances of her husband that it was a mere formality, and her title was not imperiled. The compromise or settlement was carried into effect as above stated. Afterwards she sold a part of the land and deposited the purchase money notes with Gunn as collateral security for the above stated debt of her husband. She fears a transfer of them by him. Since January 1st, 1879, she, failing to repay the purchase money, Gunn is seeking and threatening to rent out the land and dispossess her. If this should be done, she would be left penniless and homeless. The entire transaction was fraudulent and for the purpose of making her pay her husband's debts. Defendant had notice of her title (through the records of the ordinary's office), and he participated in the fraud. Discovery was waived.

The object of the bill was to set aside the transfers and deeds, re-establish the title in her, and enjoin defendant from dispossessing her or transferring the purchase money notes, to recover them, and to set aside the judgment in the claim case.

The answer denied knowledge of any fraud, etc., or notice of complainant's title. It alleged her apparent acquiesence;

and set up title to one of the lots (No. 241) by a sheriff's sale for taxes, although it was included in the general agreement made previously, to secure indebtedness of Lewis. Defendant claimed the right to possession of the land.

.   There were affidavits sustaining the bill and answer.

The court refused the injunction, and complainant excepted.

Bush & Lyon ; H. C. Sheffield, by Jackson & Lumpkin, for plaintiff in error, argued as follows :

The leading grounds for relief.

1. Transfer of wife's property to secure and pay husband's debts, void.   Code, §§1783, 1785.

Assent of wife to deed not prevent recovery, 57 *Ga.*, 207, (1) and (2) ; 54 *Ib.*, 543.   No acquiesence except under fraud, 47 *Ga.*, 26 (14).

Does one who takes a deed as *security* stand as a *bona fide* purchaser ?   40 *Ga.*, 535, 538 *et seq.*; 16 *Id.*, 469.

Was notice required ?   29 *Ga.*, 450 (2) ; 16 *Id.*, 190 (4).

If notice required, Gunn had it.   (1.) Actual notice. (2.) Records of ordinary's office.   Will held to be notice in 24 *Ga.*, 195 ;   25 *Id.*, 76 (3) ;   2 Bouv. L. Dic., "Record" (3) and (4).   (3). By possession.   *Sewell vs. Holland* (Aug. T. '78) pam. p. 116 [2] ; Cent. Law. J. 138, 318 ; 4 *Id.*, 122. (4). Was not Lewis the agent of Gunn to get his wife's signature ?   (See affidavit of Perry.)   If so, he was affected by notice to Lewis.

2. Fraud and duress.

Fraudulent statements procured assent to deed.

Duress and fraud brought settlement, Code, §§2633, 2751, 2752.

Is Gunn protected by Code, §2640 ?

He did not become a *bona fide* purchaser by taking security.   (See *supra.*)

If he stands in that light at all, it is by reason of the compromise, judgment and sale.   But he had notice before then, and the wife had actually asserted her title by claim. Answer admits notice, 25 *Ga.*, 403 (3).

The original consent was made after the deed; her husband (who had no title) was employed to get it; the claim and settlement was made with Mrs. Lewis, and Gunn recognized her as owner by making bond for titles to her.

This case differs from *Glover vs. Moore*, 60 *Ga.*, 189, in this: (1.) That case contains no fraud or duress, but a simple exceeding of authority by counsel. (2.) That appears to have been an effort to enjoin a judgment; this court held it good until set aside. The present case *seeks to set aside* the judgment.

See *Dotterer vs. Pike et al.*, 60 *Ga.*, 29 *et seq.* See also 57 *Ga.*, 207 (1); 31 *Id.*, 304; 24 *Id.*, 194 *supra.*

3. Imminent injury. Threats and proceeding to dispossess. Loss of home; family left homeless, etc. No denial in answer.

4. As to tax sale of one lot set up in answer.

(1). It is not responsive to bill, and not to be considered. 31 *Ga.*, 304 (3).

(2). Of no force. If sale was as defendant claims, title was in him, and it was not subject to taxes of Lewis.

(3). Defendant cannot claim both under and against the sale.

John T. Clarke & Son, by Marshall J. Clarke, for defendant.

Bleckley, Justice.

True it is that a wife cannot apply her property to the payment of her husband's debts, the statute disabling her from so doing. But when property which she claims is levied upon as his, and she has her day in court, and it is adjudged his, with or without her consent, under circumstances which would conclude any other suitor, why is she not concluded? Is her mental approbation or disapprobation of a judgment to regulate or vary its effect? Must she fight to the last in order to be beaten? Can she concede nothing? confess nothing? Does the judgment of a court

of competent jurisdiction clasp a married woman with less force and hold her less persistently than it does a single woman? It is the judgment, not her consent or non-consent to it, that closes the controversy. Whoever can gain a case can lose it, for there is, and must be, mutuality in the results of litigation. Any litigant who does not require a guardian *ad litem* stands before the court as the equal of the adverse party, and a judgment fairly obtained which binds the one will bind the other. To this rule there is no exception in favor of married women. The law of judgment, not the law of contract, rules the present case on the controlling point. 60 *Ga.*, 189; 61 *Ib.*, 512.

Judgment affirmed.